■ H.L. & F.H. REALTY CORP., Respondent, v GULF INSURANCE COMPANY et al., Defendants, and PANCO EQUIPMENT CORP. et al., Appellants. (Action No. 1.) PANCO EQUIPMENT CORP., Appellant, v H.L. & F.H. REALTY CORP., Respondent. (Action No. 2.) [784 NYS2d 120]—

In an action, inter alia, for indemnification (Action No. 1), and a related action to recover damages for breach of contract

(Action No. 2), Panco Equipment Corp., a defendant in Action No. 1 and the plaintiff in Action No. 2, and John A. Panebianco and Nicholas Panebianco, defendants in Action No. 1, appeal from an order of the Supreme Court, Orange County (Slobod, J.), dated July 21, 2003, which granted the motion of H.L. & F.H. Realty Corp., the plaintiff in Action No. 1 and the defendant in Action No. 2, to dismiss all of their affirmative defenses in Action No. 1 and for summary judgment dismissing the complaint in Action No. 2.

Ordered that the appeal by John A. Panebianco and Nicholas Panebianco from so much of the order as granted that branch of the motion which was for summary judgment dismissing the complaint in Action No. 2 is dismissed, as those appellants are not aggrieved by that portion of the order (*see* CPLR 5511); and it is further,

Ordered that the order is affirmed; and it is further,

Ordered that H.L. & F.H. Realty Corp. is awarded one bill of costs.

The lease between the owner of a gasoline station, H.L.& F.H. Realty Corp. (hereinafter HL&FH) and its tenant, Panco Equipment Corp. (hereinafter Panco), required Panco to procure an insurance policy protecting HL&FH from liability for environmental damage. When an underground spillage of petroleum was discovered, HL&FH contracted with an environmental engineer, whose company excavated a large quantity of contaminated soil from the site and removed all underground storage tanks, gas pumps, and other fixtures from the premises. HL&FH commenced Action No. 1 against the insurer and the brokers through which Panco obtained pollution insurance, seeking indemnification for the cleanup costs HL&FH had incurred. HL&FH subsequently added a cause of action against Panco and its two officers (hereinafter collectively the Panco parties), alleging that the Panco parties failed to have HL&FH included in the pollution policy as an additional insured.

The Supreme Court properly granted that branch of the motion of HL&FH which was to dismiss all 13 of the affirmative defenses asserted in the Panco parties' answer. In their fifth and twelfth affirmative defenses, the Panco parties alleged that HL&FH failed to comply with certain obligations and conditions of the pollution insurance policy and that certain exclusions set forth in the policy were applicable. The Supreme Court reasoned that even if the insurer considered HL&FH a named insured but had independent reasons for denying coverage to HL&FH, the Panco parties could not escape liability, due to the "hold harmless" provision of the lease. HL&FH, however, did not as-

sert an indemnity cause of action against the Panco parties, and thus did not invoke the "hold harmless" provision of the lease. The sole cause of action against the Panco parties alleged breach of contract, based on the entirely different theory that they violated the insurance procurement provision of the lease (*see Kinney v Lisk Co.*, 76 NY2d 215, 218 [1990]; *McGill v Polytechnic Univ.*, 235 AD2d 400 [1997]). Nevertheless, we affirm the dismissal of the fifth and twelfth affirmative defenses. The insurance policy was not included in the papers submitted by the Panco parties in opposition to the motion and, as such, is not contained in the record on appeal. Accordingly, the Panco parties failed to establish the terms of the policy and that they apply to support the fifth and twelfth affirmative defenses.

In its separate action against HL&FH (Action No. 2), Panco alleged that HL&FH breached the lease by removing the service station's infrastructure and all underground tanks without proper notice to it. Panco relied on a clause of the lease which provided that "[t]he Landlord [HL&FH] has the right to demolish or rebuild the Demised Premises if there is substantial damage by fire or other casualty. The Landlord may cancel this Lease within thirty (30) days after the substantial fire or casualty by giving the Tenant [Panco] notice of the Landlord's intention to demolish or rebuild. This Lease will end thirty (30) days after the Landlord's cancellation notice to the Tenant."

In support of its motion for summary judgment, HL&FH submitted the affidavit of its environmental engineer, which established that 2,376 tons of soil, including soil underneath the underground tanks, had been contaminated by petroleum and had to be removed from the leased premises. HL&FH thereby made a prima facie showing that the underground petroleum leak had caused "substantial damage," which could not be remedied without removing all of the underground tanks (*cf. Mawardi v Purple Potato*, 187 AD2d 569 [1992]). Panco submitted no evidence contradicting the engineer's assertions or raising a triable issue of fact regarding "substantial damage."

The cancellation notice referred to in the lease is a prerequisite to the termination of the lease, not the demolition or remedial action itself. As long as substantial damage occurred, the lease affords landlord HL&FH the "right to demolish or rebuild the Demised Premises," regardless of whether it provided the tenant Panco with a notice of cancellation.

Thus, the Supreme Court properly granted that branch of HL&FH's motion which was for summary judgment dismissing the complaint in Action No. 2. Krausman, J.P., Goldstein, Skelos and Lifson, JJ., concur.